The People of the State of Illinois, Respondent-Appellee, v. Larry C. Hayes, Petitioner-Appellant.

(No. 59351;

First District (2nd Division)—June 10, 1975.

David Lowell Slader, of Portland, Oregon, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, John F. Brennan, and Bertina E. Lampkin, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE STAMOS delivered the opinion of the court:

Petitioner, Larry C. Hayes, appeals from the denial, after an evidentiary hearing, of his amended petition filed pursuant to the Illinois Post-Conviction Hearing Act (Ill. Rev. Stat. 1973, ch. 38, par. 122 *et seq.*), and alternatively, pursuant to section 7 of the Civil Practice Act. (Ill. Rev. Stat. 1973, ch. 110, par. 72.)[1] The amended petition alleged that his armed robbery conviction, affirmed by the Illinois Supreme Court in *People v. Hayes*, 52 Ill.2d 170, 287 N.E.2d 465, was obtained through the concerted suppression, by both the prosecutor and the court, of exculpatory evidence.

Wilbur Wright, Lawrence Goodwin, and Larry Hayes, the petitioner

---

[1] The petition was merely captioned in the alternative. On appeal, petitioner does not advance any contention which relates specifically or alternatively to relief under section 72. Consequently, we view the petition as one filed pursuant to the Illinois Post-Conviction Hearing Act. In any event, whether we consider this to be a review of a section 72 petition or a post-conviction petition, our decision would be the same. See *People v. Bracey*, 51 Ill.2d 514, 283 N.E.2d 685.

in this appeal, were indicted for the September 1967 armed robbery of the Bargain Basket food store. On September 16, 1969, Goodwin and Hayes pleaded not guilty to the charge and were tried by a jury before the Honorable Francis T. Delaney. During the trial, Hayes was identified by two employees of the store that was robbed and his fingerprints were also recovered from a milk carton which was found in the front of the store's office. Goodwin and Hayes were found guilty of the offense of armed robbery and on October 15, 1969, Hayes was sentenced to not less than 20 nor more than 30 years in the penitentiary. Previously, on September 16, 1969, Wright pleaded guilty to the armed robbery, but sentencing was deferred until October 2, 1969. Wright was not a witness at the trial of Goodwin and Hayes, and on October 2, 1969, was sentenced to not less than 4 nor more than 6 years in the penitentiary.

On August 7, 1972, Hayes filed an amended post-conviction petition alleging that the assistant State's Attorney, Richard Neville, and the trial judge, the Honorable Francis T. Delaney, insisted and imposed upon Wilbur Wright as a condition of his plea-sentence agreement that he not testify for the prosecution or on behalf of his codefendants; and in order to secure adherence to the condition, his sentencing was postponed until after the trial of Goodwin and Hayes. Hayes contended that these alleged activities served to conceal from him valuable exculpatory evidence, and thereby, denied him due process of law.

In support of the petition, the affidavit of Wilbur Wright was submitted. Affiant stated that on September 16, 1969, he was present at a conference attended by his attorney, Raymond Ewell, and Richard Neville, assistant State's Attorney. During this conference it was agreed that upon a plea of guilty, he would receive a sentence of 4 to 6 years. However, Wright informed Ewell and Neville that he would not be a witness for the prosecution, and furthermore, if he did testify, his testimony would tend to exculpate the remaining codefendants. Because of his statements, it became an express condition of the agreed sentence that he would not testify for either the State or the defense; and to insure compliance therewith, his sentence would be delayed until after the trial of the codefendants. Judge Delaney then accepted the agreement of the parties and informed Wright that he was not to testify for either side.

Wright further stated that he did participate in the robbery of the Bargain Basket food store but that Hayes was not a participant. Although he saw Hayes once before the latter's trial, Wright avoided talking to Hayes for fear that it would jeopardize his plea-sentencing agreement. Affiant concluded by stating that but for the admonition of Judge Delaney and his unwillingness to jeopardize his plea-sentencing

agreement, he would have volunteered to have testified that Hayes was neither present nor involved in the armed robbery.

Through his affidavit, Raymond Ewell, Wright's attorney, stated that during the plea negotiations he informed Neville that Wright was not willing to cooperate in the prosecution of his codefendants so that it was thereupon agreed that Wright would not testify for either side and that this condition would be fulfilled before the plea-sentencing agreement would become effective. Ewell also stated that he advised Wright that it was a condition precedent to the imposition of his sentence agreement that he not testify.

The petitioner, Larry Hayes, stated in his affidavit that at the time of trial he attempted to talk to Wright but that Wright was uncooperative. He stated that at no time during the trial did he know why Wright refused to talk to him concerning the pending charges. It was not until 1971 that he again met Wright at Stateville Penitentiary and learned of the circumstances surrounding Wright's failure to cooperate. At that time, he examined the transcript in Wright's plea and sentencing hearing before Judge Delaney. The pertinent portion of the plea hearing on September 16, 1969, is as follows:

> "Mr. Neville: I would indicate one other thing. It is my understanding, your Honor, at this time that the defendant Wilbur Wright has intended to indicate to this Court at the time of his plea of guilty to this charge that he does not intend to testify either for the State or for the defense as to the remaining matter in this indictment.
>
> The Court: Put that on record, please.
>
> Mr. Ewell: Is that correct?
>
> Defendant: That is correct.
>
> The Court: You understand, Mr. Wright, that under your plea of guilty which you have entered and which you have been found guilty at this time you will not any further take part in any proceedings having to do with this case either as a witness for the State or a witness for the other two defendants.
>
> Defendant: That is correct."

At the sentencing hearing on October 2, 1969, assistant Neville related the following to Judge Delaney:

> "The only matter left for the Court this morning is to impose sentence on Mr. Wright. The reason, I might add, for the Court delaying sentence was for the trial on the other two nonentities to be completed. That has been done, Judge, and I think we are ready to proceed this morning with the imposition of the sentence by the Court."

Arthur Engelland, an attorney for Hayes prior to trial, stated in his affidavit that he had communicated with Wright's attorney, Raymond Ewell, who had informed him that Wright anticipated entering a plea of guilty and that Wright would not offer any aid in the defense of Hayes. Due to a prior commitment, he could not represent Hayes at trial, and therefore, Engelland made arrangements with attorney Robert Bailey to represent Hayes. He turned over his entire file to Bailey and informed him of Ewell's statement. Engelland stated that he was not aware of any conditions of Wright's guilty plea which in any way related to the capacity of Wright to testify on behalf of Hayes.

At the hearing on the petition, Judge Delaney testified on direct examination that he had discussed a plea arrangement with Neville and with Wright's attorney but that Wright was not present. He testified that his statement to Wright concerning the latter not testifying at the trial of his codefendants was not a condition placed upon Wright, but that he was only reiterating the plea arrangement made by Ewell and Neville. On cross-examination, Judge Delaney asserted that the statement he made at trial was discussed in chambers with Wright's attorney and Neville; they informed him that Wright did not want anything further to do with the case. When asked why the sentencing of Wright was postponed, Judge Delaney testified that he had no idea but that it was not postponed so that it would be imposed after the trial of Hayes and Goodwin. He further stated that in multiple-defendant cases if either side requested that he postpone sentencing he would do it, otherwise, he would pronounce sentence when the plea of guilty was made.

Richard Neville testified on direct examination that he had conferences with the attorneys for all three codefendants. Two days prior to trial he talked to Engelland concerning a plea for Hayes, but they could not arrive at any agreement, and consequently, the case went to trial. He stated that Ewell informed him that Wright would not testify for the State nor would he testify for the defense and that no conditions were placed upon Wright for his plea of guilty. After Neville talked to Ewell they went to see Judge Delaney to determine whether their plea-sentencing agreement would be acceptable to him. It was agreed that Wright would receive a minimum of 4 and a maximum of 6 years. On cross-examination, Neville testified that Wright's sentence was postponed at the former's request and that the purpose of the delay was that the sentence was to be handed down after the trial of Hayes and Goodwin. He stated that it was not, however, continued so that something would be hanging over Wright's head. Neville testified that it was a common practice in multiple-defendant cases for the sentencing of one defendant to be postponed until after the trial of his codefendants. In the instant

case there were also additional factors present inasmuch as the defendants had cases pending in other courtrooms, other attorneys were involved and a number of other people were to be contacted. He stated that the sentence of 4 to 6 years was agreed to by himself, Ewell, Judge Delaney and Wright and that had Wright testified for Hayes, he would not have felt free to impose a greater sentence than the one agreed upon.

Raymond Ewell, Wright's attorney, testified that he had very briefly come into contact with the other attorneys in the case. He and Wright had decided to enter a plea of guilty so he had spoken to Neville concerning a recommended sentence; he told Neville that Wright did not want to testify against any other person who might be accused of the crime. Neville agreed, and, according to Ewell, made the further statement: "but in order * * * what we will do is he [Wright] won't testify period." Ewell responded, "fine." When asked whether his suggestion and that of his client were in return for an agreeable sentence, Ewell answered:

> "The essence of the agreement was that Mr. Wright did not want to testify against any other people involved. In other words, he did not want the State or anyone to call him as a witness. The State said, well, we don't need him as a witness, we won't call him. And in order to proceed prior to the trial they said, well he just won't testify period because they didn't want him to then say, I will take my time, get my, you know, plea and then go in and testify to something else."

Ewell stated that he informed Wright "of the substance of the conversation and the substance of the agreement that he sought was that he would not have to testify against his—against people who were accused with him." Ewell further stated that after Wright's change of plea, he informed the attorneys for the other defendants that Wright would not testify against their clients; he could not, however, recall whether he had told them that Wright would not be available to testify on their behalf. Ewell also stated that he did not recall any conversation with the other attorneys relating to their desire to interview his client.

Wilbur Wright, called as a court's witness, testified that he had an agreement with his attorney that he would plead guilty and get a sentence of 4 to 6 years. When asked whether he had ever told anyone that Larry Hayes was not involved in the robbery, the witness first responded that "No one ever asked me that," but later stated that he told attorney Ewell and several of his friends. When asked the identity of his accomplices, he stated that one was dead and he couldn't recall his name. He later stated that the deceased accomplice was named "Blood," that he met him some-

where on the West side of Chicago, but did not know his address. The name of his other accomplice was "Big John."

Wright testified that the reason for relating the fact of Hayes' innocence only to his attorney and the arresting police officers was that "It was my understanding that if I was to get that four to six that I wouldn't tell no one." His own attorney and the court had given him the impression that if he were to testify, he would receive more time. He didn't concern himself about the fact that allegedly innocent men were convicted and sentenced for armed robbery; his primary concern was for his own favorable plea negotiation.

After argument, the trial judge denied and dismissed the petition, stating that he disbelieved the testimony of Wright, and that in any event, Wright's failure to testify at the trial of Hayes could not have harmed Hayes in light of the strong evidence leading to his conviction.

The petitioner alleges that he was denied due process of law by the actions of the assistant State's Attorney and the trial judge in suppressing the favorable testimony of a codefendant. The factual basis of the allegation was disputed, and after an evidentiary hearing, the trial court resolved the issues in favor of the State. We find no error in the trial court's decision.

In a proceeding under the Post-Conviction Hearing Act, the burden is on the petitioner to allege and prove facts which demonstrate that he has been denied his constitutional rights. (*People v. Bracey*, 51 Ill.2d 514, 283 N.E.2d 685.) To facilitate petitioner's burden, section 122—6 of the Act (Ill. Rev. Stat. 1973, ch. 38, par. 122—6), permits the court wide latitude in hearing evidence either by affidavits, depositions or oral testimony. When witnesses are presented, the credibility of the testimony in a post-conviction case, as in other cases tried by the court without a jury, is a matter for the trial judge to determine, and unless something appears to show that the determination by the trial judge was manifestly erroneous, the trial judge, who had an opportunity to see and hear each witness, will be upheld. *People v. Bracey.*

The trial court was presented with two versions of the circumstances surrounding the negotiations of Wright's guilty plea. The petitioner endeavored to establish that the assistant State's Attorney, armed with knowledge that Wright's testimony would be exculpatory of Hayes, induced Wright's silence through a condition attached to his guilty plea-sentencing arrangement. The State's evidence, on the other hand, indicated that no conditions were placed upon Wright for his plea of guilty; that it was Wright, through his attorney, who indicated that he did not want to testify for either the State or the defense; and that the trial judge's statement to this effect merely reiterated the request by Wright.

In petitioner's attempt to establish that the State suppressed exculpatory evidence by inducing Wright not to testify at the trial of Hayes, the testimony of Wright and his attorney was crucial. With regard to Wright, the cold record reveals nothing inherently probable or credible in the evidence adduced through him. In his affidavit, Wright stated that he informed Neville that his testimony would tend to exculpate Hayes and Goodwin. Yet, at the hearing, he testified that no one ever questioned him about Hayes' involvement; in fact, he didn't tell anyone of Hayes' innocence other than his attorney, some friends, and the arresting officers. Thus, Wright's testimony was not only contradicted by Neville, but was inconsistent on a material issue.

Additionally, the testimony of Wright's attorney, Raymond Ewell, did not corroborate the particulars of Wright's testimony. Ewell did not testify, as alleged by Wright, that he had been made aware of Hayes' alleged innocence. Also, contrary to Wright's assertion that Ewell initially suggested that Wright not testify, Ewell stated that he was informed by Wright that as part of any plea arrangement Wright would not testify against his codefendants. At another point, Ewell testified that Wright did not want the State or *anyone* to call him as a witness. This testimony was corroborated by Neville who testified that he was told by Ewell that Wright did not want to testify for the State or for the defense, and that the plea agreement merely reflected Wright's statement.[2]

Finally, we find Wright's testimony lacking credibility. Taken on its face, Wright's testimony necessarily concludes that Ewell, an attorney and officer of the court, knew of the exculpatory evidence in favor of Hayes, and yet actively assisted in its suppression; that the assistant State's Attorney would wilfully induce the suppression of a codefendant's testimony notwithstanding the strong case against Hayes—two eyewitness identifications and fingerprints at the scene of the crime; and that although Hayes and Wright were together on court calls for approximately 2 years before the plea negotiations began, Wright never informed Hayes that he could testify in support of Hayes' innocence. The trial judge was well within his province, as trier of fact, in finding these conclusions to be highly improbable and in finding the supportive testimony of Wright to be untrue.

It was petitioner's burden to prove that the prosecution had concealed or induced the suppression of exculpatory evidence. Having failed in

---

[2] Wright's request to have nothing further to do with his codefendants' trial was, of course, not binding on Hayes. Yet, from the record presented, counsel for Hayes never attempted to interview or subpoena Wright. It should be noted, however, that attorney Bailey, who represented Hayes at trial, did not testify at the post-conviction hearing or submit an affidavit in connection therewith.

that burden, the trial court correctly denied the relief sought for failure to demonstrate the deprivation of a constitutional right. The judgment of the circuit court is affirmed.

Judgment affirmed.

DOWNING, P. J., and LEIGHTON, J., concur.

